UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


ROBERT HAGER,                          )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )      No.  4:17 CV 2843 RWS
                                       )
NANCY A. BERRYHILL,                    )
Deputy Commissioner of Operations,     )
Social Security Administration         )
                                       )
                    Defendant.         )


## MEMORANDUM AND ORDER

Robert Hager brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of the Commissioner's decision denying his application for

disability insurance benefits.  Because the Commissioner's decision is supported

by substantial evidence in the record as a whole, I will affirm the Commissioner's

decision.

## BACKGROUND

On January 13, 2014, Hager filed an application for disability insurance

benefits pursuant to 42 U.S.C. §§ 401 et seq.  (Tr. 148).  He alleged an initial onset

date of January 10, 2014.  (Tr. 149).  Hager's application was denied on initial

consideration.  (Tr. 159).  He requested a hearing before an Administrative Law

Judge (ALJ). (Tr. 163-164). Hager, accompanied by counsel, attended the first

hearing on February 11, 2016. (96-147). A second hearing was conducted on

August 16, 2016, to allow for additional cross-examination of the vocational expert

(VE). (Tr. 49-95). The ALJ issued a decision denying Hager's application on

September 7, 2016. (Tr. 23-44). On October 16, 2017, the Appeals Council

denied Hager's request for review. (Tr. 1). Hager filed the present appeal for

judicial review, arguing that: 1) the ALJ erred in failing to evaluate whether

Hager's fibromyalgia was equivalent to one of the listed impairments in the Social

Security Administration's regulations; 2) the ALJ erred in rejecting the findings of

Hager's mental health provider, who had concluded that Hager's mental condition

was disabling; 3) the ALJ erred in failing to consider all of the relevant evidence in

formulating Hager's residual functional capacity (RFC); 4) the ALJ erred in

submitting an improperly-formed RFC determination to the vocational expert

(VE); 5) the ALJ erred in relying on the VE's testimony because it lacked

sufficient foundation; and 6) the ALJ erred in deciding Hager's case "against the

weight of all of the substantive evidence." (Doc. 16 at 18-21, 21-27, 27-29, 29-30,

30, 31-32).

    In response, the Commissioner argues that 1) the ALJ properly evaluated

Hager's credibility, his subjective complaints, and the applicability of his

fibromyalgia to the Social Security Administration's listings of impairments; 2) the

ALJ properly evaluated the medical opinion evidence of record; and 3) the ALJ properly formulated Hager's RFC and properly relied on the VE's testimony in reaching the conclusion that Hager was not disabled. (Doc. 25 at 3-10, 10-15, 15-18).

In reply, Hager argues that the medical evidence the ALJ used in evaluating his subjective complaints of pain was inapposite because such evidence is not suitable for assessing fibromyalgia. (Doc. 26 at 1-2). Hager further argues that the ALJ, in evaluating Hager's credibility, gave no weight to the longitudinal record as a whole, including Hager's work history and his efforts to seek treatment. (Id. at 2-3). Hager argues that the Commissioner improperly introduced evidence in her response detracting from Hager's credibility because that evidence was not explicitly mentioned by the ALJ in his opinion. (Id. at 3-4). Hager also reiterates his arguments that his fibromyalgia should have been evaluated as equivalent to a listed impairment and that the ALJ's RFC determination was not supported by substantial evidence. (Id. at 4-5, 6-7). Finally, Hager reiterates his argument that the vocational expert's testimony was unreliable and lacked sufficient foundation for admissibility. (Id. at 7-10).

## Administrative Record

In the Case Management Order (CMO) issued December 11, 2017, I instructed the parties to attach a statement of uncontroverted material facts to their

briefs. (Doc. 5). The CMO specified that each fact was to be set forth in a separately numbered paragraph and supported by citations to the administrative transcript. (Id. at 1-2). Hager has not complied. (Doc. 16). The Commissioner's response indicates that he generally agrees with Hager's recitation of facts, "but not to the many characterizations found therein." (Doc. 25-1).

I adopt the Commissioner's response and statement of additional material facts as uncontroverted by Hager. (Doc. 25-2). These statements provide a fair and accurate description of the relevant record before me. I will highlight specific facts as needed in addressing the parties' arguments.

## ALJ Decision

The ALJ first found that Hager had not engaged in substantial gainful activity from his alleged onset date of January 10, 2014. (Tr. 28). He also found that Hager suffers from the following severe impairments: "inflammatory arthritis, degenerative disc disease of the cervical and lumbar spine; status post right tricep surgery; fibromyalgia; depression; ADHD; and substance abuse disorder[.]" (Id.). The ALJ found that this combination of severe impairments did not equate to one of the listings denominated in 20 CFR 404, Subpt. P, App. 1. (Tr. 29).

After evaluating Hager's claims, the medical opinion evidence, and the medical evidence of record, the ALJ determined that Hager retained the residual functioning capacity (RFC) to:

> [Perform] light work as defined in 20 CFR 404.1567(b) that includes being limited to frequent handling bilaterally; frequent fingering bilaterally with items no smaller than the size of a coin or button; simple, routine, repetitive tasks and simple work related decisions; a work environment free of fast-paced production requirements and few, if any, work place changes; and no interaction with the public and only occasional interaction with coworkers and supervisors.

(Tr. 31). Based on this RFC determination, the ALJ found that Hager was no longer able to perform his past relevant work. (Tr. 36). The ALJ consulted a vocational expert (VE) to assess whether jobs within Hager's RFC existed in significant numbers in the national economy. (Tr. 36-37). The VE testified that Hager would be able to perform work as a mail sorter, router, or night cleaner. (Tr. 37). She further testified that 21,797 mail sorter jobs, 53,460 router jobs, and 138,073 night cleaner jobs existed in the national economy. (Id.). The ALJ therefore determined that Hager was not disabled within the meaning of the Social Security Act. (Tr. 38).

## LEGAL STANDARD

To be eligible for disability insurance benefits under the Social Security Act, Hager must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only

if [her] physical or mental impairment or impairments are of such severity that

[she] is not only unable to do [her] previous work but cannot, considering [her]

age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482

U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity. If the claimant is working,

disability benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). Next, the

Commissioner decides whether the claimant has a "severe" impairment or

combination of impairments, meaning that which significantly limits her ability to

do basic work activities. If the claimant's impairment(s) is not severe, then she is

not disabled. § 404.1520(a)(4)(ii). The Commissioner then determines whether

claimant's impairment(s) meets or equals one of the impairments listed in 20

C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent

to one of the listed impairments, she is conclusively disabled.

§ 404.1520(a)(4)(iii). At the fourth step, the Commissioner establishes whether the

claimant can perform her past relevant work. If so, the claimant is not disabled. § 404.1520(a)(4)(iv). Finally, the Commissioner determines whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits. § 404.1520(a)(4)(v).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I must "defer heavily to the findings and conclusions of the Social Security Administration." Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (internal citation omitted). I may not reverse the

Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

**ANALYSIS**

**1. The ALJ properly considered Hager's fibromyalgia and properly determined that it was not equivalent to a listed impairment.**

The ALJ concluded that Hager's severe impairments included fibromyalgia. (Tr. 28). He found that this impairment, in conjunction with each of Hager's other physical severe impairments, did not medically equal one of the listings in 20 CFR Part 404, Subpart P, App. 1. (Tr. 29).

The Eighth Circuit has "previously recognized that fibromyalgia is a chronic condition which is difficult to diagnose and may be disabling[.]" Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007) (citing Garza v. Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005). However, "not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled. 'While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability.' " Perkins v. Astrue, 648 F.3d 892, 900 (8th Cir. 2011) (quoting Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996)). But see Forehand v. Barnhart, 364 F.3d 984, 987-988 (8th Cir. 2004) (reversing ALJ's decision that claimant's fibromyalgia was not disabling where claimant testified to inability to walk more than one-eighth of a mile without rest, inability to stand for more than an hour, inability to sit for more

than thirty minutes, and where treating physicians' reports supported such limitations).

The Social Security Administration (SSA) does not include fibromyalgia as a listed impairment. Instead, the SSA issued a ruling on July 25, 2012, providing guidance for the evaluation of fibromyalgia in disability cases. See SSR 12-2P, 2012 WL 3104869. "Although [Social Security Rulings] do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 CFR 402.35(b)(1)." Id. at *1. Because fibromyalgia is not a listed impairment, the SSA evaluates whether the symptoms or effects of fibromyalgia medically equal a listing provided for a different impairment "for example, listing 14.09D in the listing for inflammatory arthritis." Id. at *6.

Hager argues that the ALJ's finding that the ALJ did not actually consider whether his fibromyalgia was equivalent to a listed impairment. (Doc. 16 at 18). This argument is not supported by the text of the ALJ's decision. The ALJ identified fibromyalgia as one of Hager's severe impairments. (Tr. 28). He also discussed Hager's diagnosis from treating physicians, the impact of Hager's symptoms on his daily life activities. (Tr. 32-35). The ALJ grouped Hager's physical severe impairments together, but this grouping does not mean that he failed to consider any of them individually. See also Dunahoo v. Apfel, 241 F.3d

1033, 1037 (8th Cir. 2001) ("[I]t is preferable to have the Commissioner explicitly state the reasons why a claimant failed to meet a listing, but the conclusion may be upheld if the record supports it.") (internal citation omitted).

Further, the record supports the ALJ's determination that Hager's severe physical impairments, including fibromyalgia, did not medically equal a listing. Hager asserts that his "[fibromyalgia] and confirmed diagnosis of inflammatory arthritis clearly combines to equal listing 14.09D." (Doc. 16 at 20). The version of the listings applicable to Hager's case provides that:

> Listing-level severity is shown in… 14.09D by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs.

20 CFR 404, Subpt. P, App. 1 (effective May 24, 2016 to September 28, 2016).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (quoting 20 CFR § 416.925(a)) (superseded by statute on other grounds) (emphasis in original). As a result, because the listing requirements are so demanding, "they should not be read expansively." Songer v. Berryhill, 2017 WL 1132349 (E.D. Mo. 2017) (quoting Johnson v. Astrue, 816 F. Supp. 2d 752, 774 (W.D. Mo. 2011) (further quotation omitted). "To establish equivalency, a claimant 'must present

medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010) (emphasis in original) (quoting Zebley, 493 U.S. at 531).

Hager's medical records include evidence that his major peripheral joints were not inflamed or deformed, and that he otherwise had normal functioning. Examination notes from May of 2016 indicate that Hager possessed a normal gait pattern, used no assistive devices, and was able to sit and stand unaided. (Tr. 992-993). X-rays from a rheumatologist's examination in June 2016 failed to reveal signs of osseous erosion, or bone damage resulting from arthritis, in Hager's sacroiliac joints, hands, feet, and ankles. (Tr. 1031-1032). In his reply, Hager argues that the same x-rays *did* show evidence of osseous erosion in his left wrist. (Doc. 26 at 4) (citing Tr. 1031). These contradictory findings may support a diagnosis of inflammatory arthritis, and the ALJ in fact included inflammatory arthritis among Hager's severe impairments. (Tr. 28). They do not, however, unequivocally meet the heightened level of symptoms required to medically equal a listing. See Gregor v. Colvin, 628 Fed.Appx. 462-463 (8th Cir. 2016) (affirming ALJ's decision that plaintiff's fibromyalgia was not equivalent to listing for inflammatory arthritis where plaintiff failed to show "deformity in one major peripheral weight-bearing joint resulting in inability to ambulate effectively"). I therefore find that the ALJ properly considered Hager's fibromyalgia, determined

12

that it did not medically equal a listing, and based that determination on substantial evidence.

**2. The ALJ properly evaluated the medical opinion evidence of record and determined that Hager's mental impairments were not disabling.**

The ALJ determined that Hager suffers from the severe mental impairments of depression, ADHD, and substance abuse disorder. (Tr. 28). The ALJ concluded that these impairments, "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.09." (Tr. 29). In support of this conclusion, the ALJ found that Hager has moderate restriction in his activities of daily living, moderate difficulties in social functioning, marked difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 29-30).

To qualify for listing 12.04, a claimant must either have

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

OR

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically

documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1

The ALJ considered both of these alternatives, and concluded that Hager did not meet either of them. Specifically, Hager had "marked difficulties" in only one area of limitation in paragraph B. (Tr. 30). Additionally, Hager failed to provide "medically documented history of a chronic affective disorder of at least 2 years' duration." (Tr. 30).

Hager argues that the ALJ "picks and chooses parts of the treating psychiatrist's and psychologist's records and assessments to find that the claimant's mental disabilities do not meet the Listings of 12.04 for depression." (Doc. 16 at 22). Hager mischaracterizes the ALJ's authority. "It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians." Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (citing Estes v. Barnhart, 275 F.3d 722, 725). The ALJ evaluated Hager's August 2014 treatment with treating psychologist Nancy Higgins, Ph.D., and found it was inconsistent:

[Hager] told the doctor that he does not use IV drugs
anymore, but he is addicted to Oxycontin and Percocet.
His sleep was fair. He had moderate concentration and
distractibility, and racing thoughts. He worries and he
feels depressed, hopeless, and helpless. He had no
hallucinations or delusions. His thought content was
within normal limits and he had logical and coherent
thought processes. The doctor diagnosed him with major
depressive disorder, recurrent, severe, without psychotic
features, along with ADHD, combined type. The doctor
assigned a [Global Assessment of Function][1] score of 55.

…

[Hager] had the same signs while complaining of
ongoing pain during his subsequent 11 visits [from
October 2014] through October 2015 and the doctor cited
to ongoing GAF scores in the low-to-mid 50's.

(Tr. 34-35).

Dr. Higgins ultimately opined that Hager was occupationally disabled.

(Tr. 786). The ALJ properly rejected this portion of Dr. Higgins' conclusion. "A

treating physician's opinion that a claimant is disabled or cannot be gainfully

employed gets no deference because it invades the province of the Commissioner

---

[1] "The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational
and psychological functioning 'on a hypothetical continuum of mental health-illness.'… A GAF
of 51 to 60 indicates the individual has '[m]oderate symptoms… or moderate difficulty in social,
occupational, or school functioning[.]' " Pate-Fires v. Astrue, 564 F.3d 935, n. 1-3 (8th Cir.
2009) (quoting Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Am.
Psychiatric Ass'n 1994)). "The GAF scale… does not have a direct correlation to the severity
requirements in [the Social Security Administration's] mental disorders listings." Revised
Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01
(August 21, 2000). However, the ALJ may properly consider GAF scores as evidence
supporting or detracting from a determination of disability. Pate-Fires, 564 F.3d at 944.

to make the ultimate disability determination." <u>House v. Astrue</u>, 500 F.3d 741, 745 (8th Cir. 2007) (internal citation omitted).

Instead, the ALJ found that Dr. Higgins' conclusion was inconsistent with her treatment notes and with Hager's activities of daily living. (Tr. 36). The ALJ noted Hager's ability to "do light housework[,]" "shop for groceries, cook, and do laundry[,]" perform "light maintenance around his house[,]" and go "hunting and fishing[,]" albeit at reduced duration and frequency. (Tr. 29). Hager's function report, dated February 2014, indicates no difficulty following instructions or getting along with others in a social environment. (Tr. 314).

Hager also argues that the ALJ "does not address anxiety [sic] a documented diagnosis or its listing 12.06 or ADHD all which [sic] he found severe." (Doc. 16 at 22). Hager does not support this argument beyond this single sentence. Additionally, the ALJ did not find Hager's anxiety to be a severe impairment. (Tr. 28). As a result, the ALJ was not required to evaluate anxiety as a listed impairment. 20 C.F.R. § 404.1520(a)(4)(ii) (individuals without severe impairments are not disabled and no further inquiry is required).

The ALJ properly considered medical evidence on the record when determining that Hager's mental health impairments were not disabling.

**3. The ALJ properly evaluated the underlying record in determining Hager's residual functional capacity.**

Hager argues that the ALJ failed to base his RFC determination on all the relevant evidence. Hager is specifically concerned that the ALJ failed to appropriately consider his work records, "accommodations limiting his work to 10 lbs," and certain medical records demonstrating his symptoms. (Tr. 27-28). Hager argues that as a result, the ALJ's RFC determination "did not address the impact of Hager's chronic pain, depression, anxiety and ADHD" and "ignores the limitations Hager has with his arms and hands[.]" (Doc. 16 at 28).

Dr. Modh provided opinion evidence concerning Hager's capabilities at work. (Tr. 35). (Tr. 35). For example, Dr. Modh opined that (1) Hager could only lift 10 pounds or less; (2) he could only sit or stand for 15 minutes at a time; (3) his pain would cause a "slight restriction of pace, persistence, and accuracy, so that he would be off task," but only for 10% of time or less; and (3) he had "significant limitations with reaching, handling, and fingering." (Tr. 35).

The ALJ explained that he gave Dr. Modh's opinion little weight because it was inconsistent with some of Hager's daily activities. (Tr. 36). Specifically, Hager was able to shop for groceries, hunt, fish, and occasionally lift up to 20 pounds despite his pain. (Tr. 36). The ALJ also noted that Dr. Modh failed to answer a critical survey question concerning how much Hager could sit, stand or

walk in an 8-hour workday. (Tr. 35). The Commissioner notes that Dr. Modh failed to answer six other questions specifically related to Hager's abilities in the workplace. (Doc. 25 at 11). The Commissioner argues that Dr. Modh's failure to answer these questions further support the ALJ's decision to give Dr. Modh's opinion little weight.

The ALJ also considered Hager's chronic pain and limitations with his arms and hands. Evaluating Hager's pain, the ALJ cited treatment records noting that Hager "was doing well on his current dose of pain medication." (Tr. 34). The ALJ acknowledged that at other times, Hager "struggled to maintain an acceptable balance with his pain medication" and that he reported a narcotics addiction with withdrawal symptoms. (Tr. 34). However, Hager's "consistent level of functioning throughout the period at issue" supported the ALJ's decision that Hager's pain was not as limiting as he claimed. (Tr. 34). Additionally, the ALJ addressed limitations in Hager's arms and hands by limiting his fingering and handling of items, including items "no smaller than the size of a coin or button." (Tr. 31).

As a result, the ALJ properly considered Hager's work records, physical limitations, and mental limitations when developing Hager's RFC.

### 4. The ALJ posed a proper hypothetical to the vocational expert

As his fourth argument, Hager claims that the ALJ's hypothetical failed to include all limitations supported by the medical evidence. (Doc. 16 at 29).

Specifically, the hypothetical at question 7a did not include limitations on concentration, ability to sustain an ordinary routine, and complete a workday without interruptions. (Tr. 397). When a question including these limitations was posed to the vocational expert, she answered that such an individual could not perform unskilled jobs that exist in the national economy. (Tr. 398). Hager argues that these limitations captured the "concrete consequences of [his] deficiencies," Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001), and should have been included in any proper hypothetical.

Hager is correct that a "hypothetical question must capture the concrete consequences of the claimant's deficiencies." (Id.) However, an "ALJ may exclude [from the hypothetical] any alleged impairments that she has properly rejected as untrue or unsubstantiated." (Id.) When establishing the relevant hypothetical, the ALJ excluded Hager's alleged mental impairments. She based this exclusion on the fact that she gave Dr. Nancy Higgins' testimony little weight on this subject. As explained above, the ALJ found Higgins' testimony on Hager's subjective complaints to be inconsistent with Higgins' objective notes. (Tr. 36). As a result, the ALJ properly excluded Hager's alleged mental impairments from the hypothetical posed to the vocational expert.

## 5. The ALJ properly relied on the vocational expert's testimony.

Hager argues that the vocational expert's testimony should have been stricken from the record because it was not sufficiently reliable for admission. (Doc. 16 at 30). "[The vocational expert's] testimony at the hearing was that she did not deal with statistics and did not know how the number of jobs were [sic] calculated." (Id.). Hager argues that the vocational expert also failed to establish that the programs she used, Job Browser and SkillTRAN,[2] "[have] been evaluated by others in the industry with peer review evaluations… or accepted by the SSA as a reliable product." (Id.). Hager is specifically concerned that the Dictionary of Occupational Title (DOT) used by the vocational expert is outdated, and that its categories do not line up with the data provided by the Bureau of Labor. (Doc. 26 at 8).

In support of his argument, Hager offers no controlling legal citation, although he does cite two Seventh Circuit cases. In Herrmann v. Colvin, the vocational expert did not identify the means by which he calculated the number of jobs in the national economy. 772 F.3d 1110, 1114 (7th Cir. 2014). The Seventh Circuit reversed the lower court's affirmation of the ALJ's opinion in part on this basis. Id. The Seventh Circuit also expressed skepticism for a method of

---

[2] SkillTRAN is the specialized job-searching program the VE used in formulating her response to the ALJ's hypothetical. She also made use of state job services such as MERIC (Missouri Economic Research & Information Center) and IDES (Illinois Department of Employment Security). *See* Tr. 57-58.

determining the number of applicable jobs that was common at the time. (Id. at 1113-14). Specifically, the court was concerned about the common practice of dividing Census Bureau data evenly among DOT job categories to estimate the number of jobs in each of those smaller categories. (Id. at 1113-14). In Voigt v. Colvin, the Seventh Circuit again rejected vocational expert testimony because the methods were not sufficiently explained. 781 F.3d 871, 879 (7th Cir. 2015). The Seventh Circuit also expressed concern for the common practice of dividing Census Bureau data evenly among DOT job categories.

Those Seventh Circuit cases are easily distinguishable from Hager's case. In Hager's case, the vocational expert described his methods to the ALJ in a second hearing on the record. (Tr. 49-95, esp. 55-65). Those methods were different from the one described by the Seventh Circuit. Specifically, the vocational expert in this case used Bureau of Labor statistics rather than Census Bureau information. (Tr. 65). The vocational expert searched these statistics by specific job titles that corresponded to the specific DOT categories for which Hager was qualified. (Tr. 65). The vocational expert then added the numbers provided for each specific job title, updated daily. (Tr. 60-61). The vocational expert used this method to determine a national total of jobs in the relevant job title. She also determined a Missouri total, and a St. Louis-area total, using Illinois and Missouri numbers for the metropolitan area. (Tr. 58-60). The vocational expert's reported numbers were

therefore relevant to the current time, and avoided any concern about the comparability of DOT categories with other data sources.

As a result, the ALJ properly relied on the vocational expert's testimony.

**6. The ALJ based his opinion on substantial evidence on the record as a whole.**

In a final argument, Hager reiterates his previous points to declare that the ALJ's decision is "against the weight of all of the substantive evidence." (Doc. 16 at 31). In part, Hager points to 1) accommodations made by his last employer, 2) side effects of medications, 3) alleged drug abuse, 4) Hager's limitations with the use of his arms and hands, 5) inflammation test results from Dr. Budd and physician's assistant Meyer.

"[A]n ALJ is not required to discuss every piece of evidence submitted." Black v. Apfel, 143 F.3d 383, 386. Further, "failure to cite specific evidence" in an ALJ's opinion "does not indicate that such evidence was not considered." Id. In his decision, the ALJ cites enough evidence to support his choices throughout the five-step Social Security appeals process. For example, Hager's work history and accommodations made by his past employer are consistent with the vocational expert's testimony that Hager cannot return to his past work. (Tr. 36, 301-02). The ALJ considered Hager's pain management and medications, but concluded that "the objective findings and treatment notes of his treating doctors do not

support greater limitations." (Tr. 34). The ALJ also acknowledged Hager's substance abuse but concluded it did "not affect his level of functioning." (Tr. 35). The ALJ considered Hager's fibromyalgia, as it affected his arms and hands, and made related accommodations in his RFC. (Tr. 31, 33). Finally, the ALJ considered Dr. Budd's diagnosis of inflammatory arthritis but determined that "the severity of this condition is consistent" with Hager's RFC, based on "mild" test results that don't support a finding of "high disease activity." (Tr. 34).

The ALJ considered these items raised by Hager, along with other evidence when reaching his conclusions. The sum of the evidence considered by the ALJ constitutes substantial evidence on the record as a whole. As a result, I must affirm the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.

An appropriate Judgment Order will be issued herewith.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2019.